[Civ. No. 7837. Third Dist. Apr. 9, 1951.]

LLOYD G. BENJAMIN, Plaintiff and Appellant, v. STANISLAUS TITLE COMPANY (a Corporation), Defendant; WILLIAM H. MURRAY et al., Respondents; MARY BENJAMIN, Cross-Defendant and Appellant.

Rodin & Nelson for Appellants.

Cleary & Zeff for Respondents.

PEEK, J.—This is an appeal by plaintiff from a judgment in favor of defendants and cross-complainants Murray and Huffman who were substituted in place of Stanislaus County Title Company in the action filed by plaintiff against said defendant for the recovery of certain real estate commission then held in escrow by said defendant.

Following the institution of said action by plaintiff, the title company, through its president, filed its affidavit for "Interpleader of Third Persons" wherein it was averred that it held the sum of $940 in an escrow; that certain realtors, doing business under the name of Murray-Huffman, were claiming said sum as a commission for the sale of real property belonging to one Peterson and prayed that the court order said sum deposited with the court and that said partnership be substituted as defendant in the place of said title company. Thereafter the partnership appeared and alleged by cross-complaint that on November 20, 1946, it had taken a listing contract for the sale of a ranch belonging to said Peterson; that the partnership was a member of Modesto Multiple Listing Service, an organization whose members agreed that in the event of the sale of property listed with the service the broker procuring the listing is entitled to 40 per cent of the commission and the balance thereof goes to the broker effecting the sale subject to a small percentage which is deducted for the expenses incident to the operation of the service; that Mary Benjamin, while employed as a saleswoman for one Goodin, a member of the listing service, obtained information concerning Peterson's listing with Murray-Huffman; that while said listing was still in full force and effect she obtained another listing from Peterson for her son, a realtor not a member of the listing service, and thereafter sold the property as saleswoman for her son, plaintiff herein. Attached to the cross-complaint as a part thereof is a copy of the Murray-Huffman listing which shows that it was irrevocable for the first 60 days and thereafter revocable on five days' written notice until the expiration of four months after which it was automatically canceled. Following the order of the court overruling plaintiff's general and special demurrer to the cross-complaint appellants answered denying any right of respondents to the sum in question; denied that respondents' listing

was in effect at the time of the sale or that she knew of the listing while working for Goodin and alleged that the listing in question was not obtained until approximately a month after commencing work with her son. At the conclusion of the trial the court, over appellants' objection, granted respondents' motion to amend to conform to proof. The amendment consisted of the allegation that at the time the listing was obtained from Peterson by Mary Benjamin it was agreed between them that the second listing was subject to the prior rights of the parties under the first listing until that document was canceled by the previously mentioned five-day written notice. In other words in the event of a sale while that listing was still in effect appellants would recognize respondents' superior rights to a commission.

The findings of fact in general follow the allegations of the cross-complaint and amendment. The judgment, however, appears to have been based largely on the finding concerning the agreement between Mary Benjamin and Peterson.

█ Our examination of the record leads to the conclusion that said finding is completely without support. The evidence most favorable to respondents is the testimony of their own witness, E. W. Peterson.

The only other testimony concerning the execution of the second listing was that of Mary Benjamin who stated that Peterson told her of the Murray-Huffman listing, but she denied that he also told her that his listing with her "could not take effect" until the five-day period provided for in the first listing had expired.

Upon redirect examination by counsel for respondents, Peterson testified as follows:

"Q. What I am trying to inquire into is this, Mr Peterson: At the time you executed these agreements you knew and so told Mrs. Benjamin that until the five days was up no agreement would be effective that would cut out a commission of Murray-Huffman?

"A. There was *nothing* said about *any commission* on the release, *we never discussed that at all*." (Emphasis added.)

". . . . . . . . . . .

"Q. In talking to her, Mr. Peterson, did you point out the fact that if a sale was concluded before the end of the five day notice, that Murray-Huffman would be entitled to their part of the commission and that your papers, therefore, could not become effective until after that five days?

"MR. NELSON: Your Honor, he answered that, in effect, when he said he did not discuss the matter of commission to Murray-Huffman with Mrs. Benjamin.

"THE COURT: Well, you can answer it if you remember.

"A. Well, the only discussion on the matter was, there was still five days to elapse before we could consummate a deal; that was the whole discussion, because under the terms of the agreement already, Murray and Huffman was covered."

In other words it clearly shows that plaintiff and cross-defendants pleaded and proved an agency agreement with Peterson and a sale pursuant to that agreement, by which they became entitled to a commission of 5 per cent of the purchase price, $940 of which remains unpaid, which sum has been deposited in court by the Stanislaus Title Company. Respondents and cross-complainants established no right whatsoever to any part of the Benjamins' commission. The sum total of the evidence introduced by them proved nothing more than a prior exclusive agency agreement with Peterson, under which they were entitled to a commission of 5 per cent of the selling price of the ranch in the event the same was sold during the life of the agreement, no matter by whom the sale was effected.

The judgment is reversed and the cause is remanded with instructions to the trial court to enter judgment in favor of plaintiff and cross-defendants.

Adams, P. J., and Van Dyke, J., concurred.

A petition for a rehearing was denied May 8, 1951.